OPINION
{¶ 1} Appellant, Southington Local School District Board of Education ("the Board"), appeals the judgment of the Trumbull County Court of Common Pleas denying its motion for summary judgment on Appellee Samantha Alden's claim for intentional infliction of emotional distress and the claim of her parents Appellees Joseph Alden and *Page 2 
Pamela Alden for loss of consortium. At issue is whether a genuine issue of material fact exists concerning whether appellant is immune from liability under Ohio's political subdivision immunity statute. For the reasons that follow, we reverse and remand.
 {¶ 2} These consolidated appeals arise out of two cases filed in the trial court. On October 15, 2003, Jerry Kovar ("Kovar"), a member of the Board, filed a complaint against certain defendants, including Appellees Joseph Alden and Pamela Alden, alleging that, during a labor dispute between the Board and the non-teaching employees' union in August and September, 2003, they defamed him by falsely stating he "has 13 charges of child molestation against him;" "he fondles young boys;" and he is a "pedophile" and a "pervert." The case was filed under Case No. 2003 CV 02486.
 {¶ 3} On November 19, 2003, appellees filed an answer, counterclaim, and third-party claim against appellant, claiming that Kovar and appellant were liable to their daughter Appellee Samantha Alden for the infliction of emotional distress. On December 26, 2003, appellant moved to strike the third-party complaint.
 {¶ 4} While the Board's motion to strike was pending, on January 26, 2004, appellees filed a separate complaint under Case No. 2004CV196, claiming intentional infliction of emotional distress and loss of consortium against Kovar. Appellees alleged he made inappropriate and harassing comments and gestures of a sexual nature that caused her to suffer injury to her "mind and body." Appellees further alleged that the Board "acquiesced, encouraged and/or ratified the conduct of its member * * * Kovar." On February 26, 2004, appellant filed an answer to this complaint, denying its material allegations and asserting political subdivision immunity as a defense. On April 9, 2004, *Page 3 
the trial court ordered that these cases be consolidated and they proceeded under Case No. 03-CV-2486.
 {¶ 5} On October 26, 2005, appellant filed a motion for summary judgment arguing that appellees' claims against it were barred by political subdivision immunity. The Board argued that none of the statutory exceptions to immunity applied. In support, appellant filed the depositions of Samantha Alden, Kovar, Board member Michael Davis and Superintendent William Pfahler.
 {¶ 6} Samantha Alden testified in deposition that three incidents occurred between her and Kovar. The first incident occurred on a school day sometime while she was in the eighth grade after school at about 2:30 p.m. She was waiting for her older brother outside the weight lifting building to pick her up in his car and take her home. She was carrying her school bags.
 {¶ 7} At some point Kovar walked out of the building and said to her, "would you like to put your stuff in my car, and while you're at it, I'll be in in a little bit." She shook her head no and Kovar walked back in the building. She knew Kovar from school and he was always with the students, but this was the first time they had ever spoken. She knew her brother and Kovar had been in the building lifting weights. Kovar was about nine feet away from her when he spoke to her. She said she understood his comment to have a "sexual content."
 {¶ 8} When her brother came to pick her up, she told him about the incident and told him not to tell her parents. Neither Samantha nor her brother reported this incident to anyone at the school. *Page 4 
 {¶ 9} Two weeks later, Samantha was in the school lobby at about 7:30 a.m. waiting for the bell to ring. Her friend Jeff was standing behind her when the bell rang. At that point she walked out of the lobby with a group of other students, which she characterized as a "crowd like a cattle drive." While they were walking, she said Kovar came up behind Jeff, who she said Kovar knew from weight lifting, and pushed Jeff, which caused him to push Samantha. She said she did not fall; she was just pushed "out of step." She interpreted this as Kovar being "ignorant, cocky." She testified she believed Kovar's push was directed at her, but she said she had "no reason" for arriving at this conclusion. She did not report this incident to anyone at the school.
 {¶ 10} For the third incident, Samantha testified that in the following school year, 2003-2004, while she was in the ninth grade, she was at her locker one time when Kovar walked past her. She said he did not touch her, but he said "hello" in an "ignorant" way and "glared" at her. She said she did not know if he was looking at her because he was wearing sunglasses. She did not report this incident to anyone at the school.
 {¶ 11} Samantha had told her friend Ava about the car incident and one of Samantha's teachers Mrs. Cornwell overheard Ava discussing it with another student. Mrs. Cornwell asked Samantha if she wanted to report it and she said she did not. Mrs. Cornwell later told her to go to Superintendent William Pfahler and tell him what happened. Samantha reported the car incident to him and he asked her if she had told her parents. She said she had not and that she did not want to. He asked her if he could tell her parents and she said she would tell them, but she never did. *Page 5 
 {¶ 12} Samantha testified that Mr. Pfahler reported the incident to Trumbull County Children's Services, which investigated the matter. Agents from Children's Services interviewed Samantha and Kovar. They told Samantha to tell her parents about her allegations, but she did not.
 {¶ 13} About three months after the car incident, some friends of Samantha's parents told them about that incident. Her parents confronted her and she told them about the car and the lobby incidents.
 {¶ 14} Samantha also testified that on a few occasions during a strike at the school in the beginning of the 2003-2004 school year, when she was in ninth grade, Kovar ate lunch in the cafeteria while she was there. On some occasions he sat alone and on others he sat with some other students. He never sat at her table and never talked to her. She also testified that at that time, on a few occasions, he went into her classroom and spoke to her teacher and some other students in the class.
 {¶ 15} Samantha never went to a psychologist or sought any type of counseling as a result of her contacts with Kovar. At around the time of these two incidents, Samantha had some headaches. She went to a doctor who prescribed Tylenol and the headaches went away. She had some stomach problems, but she did not know why. She never sought treatment for them and she no longer has stomach problems.
 {¶ 16} Kovar testified that the car incident took place in late winter or early spring of 2003 during the 2002-2003 school year. He said that during this incident, while Samantha was waiting in the parking lot for her brother to pick her up, Kovar asked Samantha if she wanted him to wait in her brother's car with her until her brother *Page 6 
arrived. Kovar said he asked her this because she was standing in the parking lot alone and he was concerned for her safety.
 {¶ 17} Superintendent William Pfahler testified that Mrs. Cornwell, the teacher who had overheard Ava discussing the car incident with another student, reported it to Marie Vine, the school treasurer; however, Mrs. Cornwell did not provide Samantha's name because Samantha did not want to file a complaint. Mr. Pfahler reported the allegations to Al Haberstroh, president of the Board. President Haberstroh told Mr. Pfahler to schedule a meeting with Kovar to discuss the allegations. A meeting was held with Mr. Pfahler, Mr. Haberstroh, Kovar, and Ms. Vine. While the name of the student was not provided to him, Kovar was advised of the allegations. He denied making any statement of a sexual nature to any student.
 {¶ 18} Mr. Pfahler asked Ms. Vine to ask Mrs. Cornwell to encourage the student to identify herself and to meet with him to discuss her allegations. After Samantha agreed, Mr. Pfahler met with her and discussed her version of events. Mr. Pfahler did not take Kovar's alleged comment to be sexual in nature. Mr. Pfahler offered to tell Samantha's parents about her allegations, but she declined and said she would tell them herself, but she never did. Mr. Pfahler agreed not to tell her parents because he believed it necessary to maintain her confidentiality.
 {¶ 19} Mr. Pfahler testified that Samantha's allegations were reported to Children's Service at that time, which investigated the matter. It was his understanding that one of the Board's secretaries had reported the matter to Children's Services. That agency contacted Mr. Pfahler twice to schedule interviews with Samantha and Kovar. After interviewing the witnesses, Children's Services advised Mr. Pfahler that there was *Page 7 
no merit to the allegations and there was nothing that Kovar had done that would necessitate any action by the Board. Still, the Board members told Kovar to avoid contact with Samantha, and she reported no further incidents.
 {¶ 20} Mr. Pfahler testified that in the beginning of the 2003-2004 school year, the non-teaching staff in the district went on strike, and several board members, including Kovar, volunteered to do many jobs at the school, such as cleaning and driving the bus, in order to keep the school open. During this period other board members ate in the cafeteria on occasion, and Mr. Pfahler testified that he often ate in the lunch room at that time. There was nothing unusual about Board members such as Kovar eating in the cafeteria during the strike.
 {¶ 21} Joseph Alden testified that in the spring of 2003, he learned about Samantha's allegations and he went to see Mr. Pfahler without an appointment. Mr. Alden said he "jumped on" Mr. Pfahler for not telling them about Samantha's allegations. He said he did not want Kovar around Samantha. Mr. Pfahler assured him Kovar would not be around her anymore. In the beginning of the 2003-2004 school year, the Aldens were upset because Kovar was in the school almost every day acting as a volunteer during the strike. Mr. and Mrs. Alden met with the Board in executive session to voice their concerns. They told the Board they wanted Kovar out of the school and away from their daughter. The Board appointed Board member Michael Davis to act as liaison between the Board and the Aldens.
 {¶ 22} Michael Davis testified that the car incident occurred "several months" before April, 2003. He said that he was appointed liaison between the Board and the Aldens because he had been Samantha's coach and was friendly with the Aldens. He *Page 8 
testified that on several occasions, after the Aldens met with the Board to voice their concerns, he followed up with Kovar and Samantha. She reported things were "getting better," and Kovar said that he was avoiding all contact with her. No other incidents were reported.
 {¶ 23} On December 22, 2005, appellees filed a brief in opposition to the Board's summary judgment motion. Appellees did not attempt to argue the existence of factual issues presented under any of the exceptions to political subdivision immunity at R.C. 2744.02(B). Instead, the sole argument advanced by appellees was that R.C. 2744.09(E) provides an exception to immunity for "civil claims based upon alleged violations of the Constitution or statutes of the United States," and that they have claims under Title VII, which prohibits sexual harassment in the workplace, and Title IX, which prohibits sexual harassment in public schools. It is undisputed that appellees did not include such claims in their complaint and never moved to amend their complaint in an effort to assert them. Appellees did not submit any affidavits or other evidentiary materials in support of such claims or the claims plead in their complaint.
 {¶ 24} On April 3, 2006, the trial court denied appellant's motion for summary judgment, finding "that there exists a multitude of questions of fact that exist regarding the pleadings, facts that give or do not give immunity to the Board, and what the Board did, didn't [sic] do or should have done." Appellant appealed the trial court's ruling in Alden v.Kovar, 11th Dist Nos. 2006-T-0050 and 2006-T-0051, 2006-Ohio-3400. On June 30, 2006, this court dismissed appellant's appeal for want of a final appealable order, holding that the trial court's "decision denying summary judgment was not an *Page 9 
order denying appellant immunity. Rather, the decision indicates that material issues of fact remain with respect to whether immunity exists." Id. at ¶ 8.
 {¶ 25} Thereafter, on October 3, 2007, the Ohio Supreme Court decidedHubbell v. City of Xenia, 115 Ohio St.3d 77, 2007-Ohio-4839, in which the Court held that a trial court's judgment which denies summary judgment, when subdivision immunity is alleged, due to the existence of questions of fact is a final, appealable order. Id. at 82.
 {¶ 26} On October 17, 2007, appellant filed a motion asking the trial court to reconsider its denial of its motion for summary judgment in light of the Supreme Court's holding in Xenia or, in the alternative, to certify its denial of summary judgment as a final, appealable order under Civ. R. 54(B).
 {¶ 27} On November 14, 2007, the trial court issued an amended judgment entry reiterating verbatim its original judgment denying appellant's motion for summary judgment, but this time adding the following language: "Technically, there is no Motion for Reconsideration in this Court so Defendant's Motion for Reconsideration is deemed moot. There is no just reason for delay of appeal of this matter."
 {¶ 28} Appellant again appeals the trial court's denial of its motion for summary judgment, asserting two assignments of error. Since the issues raised in both assigned errors are interrelated, they shall be considered together. Appellant asserts for its assignments of error:
 {¶ 29} "[1] THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT SOUTHINGTON LOCAL SCHOOLS BOARD OF EDUCATION'S MOTION FOR RECONSIDERATION. *Page 10 
 {¶ 30} "[2] THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT SOUTHINGTON LOCAL SCHOOLS BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 31} As a preliminary matter, while appellees do not challenge the finality of the trial court's judgment, we observe that, pursuant to the Supreme Court of Ohio's holding in Xenia, supra, the trial court's judgment denying summary judgment is a final order and we have jurisdiction to review this matter. In Xenia, the Court held:
 {¶ 32} "* * * A court of appeals may not avoid deciding difficult questions of immunity by pointing to the trial court's use of the language `genuine issue of material fact.' Upon de novo review, a court of appeals may find that the issues of fact cited by the trial court do not justify the denial of immunity.
 {¶ 33} "A court of appeals must exercise jurisdiction over an appeal of a trial court's decision overruling a Civ. R. 56(C) motion for summary judgment in which a political subdivision or its employee seeks immunity. * * * [A] court of appeals must conduct a de novo review of the law and facts. If, after that review, only questions of law remain, the court of appeals may resolve the appeal. If a genuine issue of material fact remains, the court of appeals can remand the case to the trial court for further development of the facts necessary to resolve the immunity issue." Id. at ¶ 81.
 {¶ 34} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto County Comm'rs (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp. (1992), 79 Ohio *Page 11 
App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 35} In order for summary judgment to be granted, the moving party must prove:
 {¶ 36} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389.
 {¶ 37} The Supreme Court stated in Dresher v. Burt, 75 Ohio St.3d 280,296, 1996-Ohio-107:
 {¶ 38} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ. R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *." (Emphasis omitted.)
 {¶ 39} If the moving party satisfies its burden, then the nonmoving party has the burden to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ. R. 56(E). *Page 12 
 {¶ 40} In Frazier v. City of Kent, 11th Dist. Nos. 2004-P-0077 and 2004-P-0096, 2005-Ohio-5413, this court addressed the appropriate analysis upon the assertion of a defense based on political subdivision immunity, as follows:
 {¶ 41} "R.C. Chapter 2744 sets forth a three tiered analysis for determining a political subdivision's immunity from liability.Greene Cty. Agricultural Soc. v. Liming, (2000), 89 Ohio St.3d 551, 556,2000-Ohio-486. First, R.C. 2744.02(A)(1) codifies the general rule of sovereign immunity, viz., that `a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' However, this general rule is limited by R.C 2744.02(B), which sets forth five instances in which a political subdivision is not immune. Hence, the second tier of the analysis requires a court to determine whether any of the exceptions under R.C. 2744.02(B) apply. Finally, if a political subdivision is exposed to liability through the application of R.C. 2744.02(B), a court must consider whether the political subdivision could legitimately assert any of the defenses or immunities under R.C. 2744.03. See, e.g.,Greene Cty. Agricultural Soc, supra, at 557." Id. at ¶ 20.
 {¶ 42} We begin our analysis by noting that a school district is a "political subdivision" as defined by R.C. 2744.01(F). Accordingly, it is generally not liable for injuries caused by the acts or omissions of its employees. R.C. 2744.02(A)(1). On appeal appellees argue the exceptions to immunity provided for at R.C. 2744.02(B)(2), (4), and (5) apply to deprive the Board of its immunity. In opposition, the Board argues *Page 13 
that the exceptions to subdivision immunity provided for under these sections do not apply.
 {¶ 43} With respect to the exceptions at R.C. 2744.02(B)(4) and (5), the parties agree that these sections were revised by the General Assembly on April 9, 2003. Prior to that date, these sections provided exception to immunity if, under R.C. 2744.02(B)(4), the injury, death or loss was caused by the negligence of an employee of a political subdivision on or within the grounds or buildings used in connection with a governmental function or if, under R.C. 2744.02(B)(5), a section of the Revised Code expressly imposed liability upon a political subdivision.
 {¶ 44} After the revisions, these sections now provide:
 {¶ 45} "(B) * * * [A] political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 {¶ 46} "* * *
 {¶ 47} "(4) * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due tophysical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *.
 {¶ 48} "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *." (Emphasis added.) *Page 14 
 {¶ 49} Thus, under the revised version of R.C. 2744.02(B)(4), in addition to requiring acts of negligence, the exception to immunity requires that the injury, death, or loss be due to a defect on or within the grounds or buildings of the political subdivision. Further, R.C. 2744.02(B)(5) was amended to require that a statute specifically impose civil liability on a political subdivision before it can be held liable for the injury, death, or loss.
 {¶ 50} The parties agree that if the acts or omissions of the Board took place before April 9, 2003, the former version of these statutes apply, while the revised version applies to events occurring after that date.
 {¶ 51} Appellant argues that because appellees have the burden of proof, they have the burden to prove the exact date on which the acts or omissions of the Board took place. Appellant argues that because appellees cannot prove the exact date on which the acts or omissions of the Board occurred, the version of the statute in effect after April 9, 2003 should apply. In general, in a personal injury action, the plaintiff is not required to prove the exact date on which the injury occurred. In the context of this case, of course, the date of the occurrence is pertinent to determine which version of the immunity statute applies. This does not require evidence of the exact date; as long as there is some evidence that the car incident occurred prior to April 9, 2003, that is sufficient. While appellees have not drawn our attention to any evidence in the record suggesting that the acts or omissions occurred before April 9, 2003, our independent review of the record reveals that Board member Michael Davis testified that the car incident occurred "several months" prior to April, 2003. Further, Kovar testified the car incident occurred in late winter or early spring of 2003. While there is conflicting *Page 15 
evidence on this point, construing the evidence most strongly in favor of appellees, they are entitled to have the former version of R.C. 2744.02(B)(4) and (5) applied to the facts of this case. However, even under the version of the statute in effect prior to April 9, 2003, neither R.C. 2744.02(B)(4) nor (5) apply to deprive appellant of immunity.
 {¶ 52} Under the former version of R.C. 2744.02(B)(4), the plaintiff was required to prove that the injury was caused by the negligence of an employee of a political subdivision on or within the grounds or buildings used in connection with a governmental function. Appellees alleged in their complaint that Kovar's conduct was intentional or reckless. There is no allegation in the complaint that his conduct was negligent. Further, according to the testimony of Samantha, Kovar's conduct was intentional. We observe there is no evidence in the record that Kovar's conduct was negligent. Therefore, as a matter of law, the exception to immunity under the former version of R.C. 2744.02(B)(4) does not apply.
 {¶ 53} In order to assert the applicability of the exception to immunity provided for under R.C. 2744.02(B)(5), appellees argue appellant violated a duty imposed by R.C. 2151.421 to report Kovar's conduct to Children's Services. R.C. 2151.421(A)(1)(a) and (b) require teachers and other school employees who know or suspect a child has suffered any physical or mental injury which indicates abuse or neglect to report that knowledge to the local children's services agency. Pursuant to R.C. 2151.031, an "abused child" includes any child who:
 {¶ 54} "(A) Is the victim of `sexual activity' as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter * * *;
 {¶ 55} "(B) Is endangered as defined in section 2919.22 of the Revised Code * * *; *Page 16 
 {¶ 56} "(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. * * *
 {¶ 57} "(D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare.
 {¶ 58} "(E) Is subjected to out-of-home care child abuse."
 {¶ 59} Construing the evidence in a light most favorable to appellees, there is no evidence in the record that Samantha was an abused child because Kovar's comment did not amount to sexual activity or child endangerment. In any event, even if there was such evidence, it is undisputed that Samantha's allegations were reported to Trumbull County Children's Services at the same time the school learned of the allegations so that, even if there was a duty to report, that duty was satisfied.
 {¶ 60} Based upon the foregoing analysis, as a matter of law, the exception to immunity under the former version of R.C. 2744(B)(5) does not apply.
 {¶ 61} Finally, appellees also argue the exception to political subdivision immunity provided for at R.C. 2744.02(B)(2) for injuries caused by the negligent performance by its employees of proprietary functions applies because the Board failed to fulfill its statutory duty to report the allegations to Children's Services. Proprietary functions are those which involve "activities that are customarily engaged in by nongovernmental persons," such as the operation of a hospital, stadium, or cemetery. See R.C. 2744.01(G). The Board's responsibility to provide an education is a governmental, rather than a proprietary function. See R.C. 2744.01(C)(1). Moreover, *Page 17 
appellees did not allege in their complaint or submit any evidence of negligence and, for the reasons outlined, supra, the Board did not violate any duty to report.
 {¶ 62} Appellees suggest that the special relationship exception to the common law public duty rule applies to defeat the immunity of a political subdivision when a teacher fails to report suspected or known child abuse. However, the Supreme Court of Ohio has recently held that "as the special-relationship exception is not codified in R.C. 2744.02(B) * * * it is therefore not an independent exception to a political subdivision's general immunity from liability." Rankin v.Cuyahoga County Department of Children and Family Servs.,118 Ohio St. 3d 392, 397, 2008-Ohio-2567. The Court explained: "While the public-duty rule and special-relationship exception might be relevant in establishing a claim, these common law doctrines are irrelevant to a claim against a political subdivision unless the claim is permitted under R.C. 2744.02." Id.
 {¶ 63} Further, as noted, supra, the only wrongful conduct of Kovar alleged by appelles was the intentional infliction of emotional distress. Pursuant to R.C. 2744.02(A)(1), a political subdivision is immune from liability unless one of the exceptions at R.C. 2744.02(B)(1)-(5) applies. These sections do not provide an exception to the Board's immunity for intentional torts. This court held inSabulsky v. Trumbull County, 11th Dist. No. 2001-T-0084, 2002-Ohio-7275, that intentional tort claims are, by the express terms of the statute, not subject to any exception under R.C. 2744.02(B). Id. at ¶ 14. "Because an intentional tort is not the result of negligence, an intentional tort is not an exception to the broad immunity generally enjoyed by political subdivisions." Thayer v. West Carrollton Bd. OfEdn., 2d Dist. No. 20063, 2004-Ohio-3921, at ¶ 14. In Carter v.Karnes, 10th Dist. No. 02AP-98, 2002-Ohio-7193, the Tenth *Page 18 
Appellate District held that the political subdivision immunity statute does not create an exception to immunity of the political subdivision when its employees act recklessly, or in a wanton or malicious manner. Id. at ¶ 33. The court further held: "There are no exceptions to immunity for the tort of * * * intentional infliction of emotional distress * * *." Id. at ¶ 27.
 {¶ 64} As appellant correctly points out, in appellees' brief in opposition to summary judgment, they did not respond to the argument in appellant's summary judgment motion that none of the exceptions in R.C. 2744.02(B)(1)-(5) apply. Instead, they argued, as they argue now, that Samantha was sexually harassed in violation of the United States Code, Title IX, and that R.C. 2744.09(E) renders inapplicable the immunity provided under R.C. Chapter 2744. That section provides:
 {¶ 65} "This chapter does not apply to, and shall not be construed to apply to, the following:
 {¶ 66} "* * *
 {¶ 67} "(E) Civil claims based upon alleged violations of the constitution or statutes of the United States * * *."
 {¶ 68} Appellees did not assert any claim under Title IX in their complaint. Civ. R. 56(B) provides:
 {¶ 69} "A party against whom a claim, counterclaim or cross-claim is asserted may * * *, move * * * for summary judgment in the party's favor as to all or any part of the claim, counterclaim, [or] cross-claim * * *." Thus, a motion for summary judgment by a defendant is directed only against a claim, counterclaim or cross-claim that has been asserted in the case, not against some hypothetical, intended, or speculative claim that *Page 19 
may later be filed. The only claims asserted by appellees are for the intentional infliction of emotional distress and the derivative claim of loss of consortium. As a result, appellees cannot avoid summary judgment by making an argument about the viability of claims that are not plead in their complaint. We note that appellees' complaint has been pending since January 26, 2004. At no time have appellees attempted to amend their complaint to allege a claim under Title IX.
 {¶ 70} The holding of the Second Appellate District in Miller v. Cityof Xenia, 2d Dist. No. 2001 CA 82, 2002-Ohio-1303, 2002 Ohio App. LEXIS 1315, is pertinent:
 {¶ 71} "Plaintiffs allege that [R.C. 2744.02(A)(1) providing for political subdivision immunity] does not apply because R.C. 2744.09
limits immunity for `civil claims based upon alleged violation of the constitution or statutes of the United States.' R.C. 2744.09. The remaining claims in this case include intentional infliction of emotional distress and loss of consortium. Neither of these claims allege a violation of the constitution or statutes of the United States. Therefore, the City of Xenia is entitled to immunity from the intentional infliction of emotional distress claim because intentional infliction of emotional distress does not fall within one of the exceptions to municipal immunity." Id. at *7.
 {¶ 72} As the Seventh Appellate District in Scassa v. Dye, 7th Dist. No. 02CA0779, 2003-Ohio-3480, held:
 {¶ 73} "A plaintiff may not successfully rebut a motion for summary judgment by merely raising new theories of recovery in its reply opposing summary judgment. White v. Mt. Carmel Med. Ctr.,150 Ohio App.3d 316, 2002-Ohio-6446 at [¶ 29]* * *. Appellant's complaint was filed on September 13, 2000. His motion in opposition to summary *Page 20 
judgment was filed on February 22, 2002. At no time in the seventeen months between the filing of the complaint and the filing of the motion in opposition to summary judgment did Appellant give any indication that he was pursuing any claims other than those stated in his original complaint. Appellant did not attempt to amend his complaint to include these new theories of recovery. Appellee's motion for summary judgment was based on the claims presented in Appellant's complaint, and Appellant was required to respond to the motion for summary judgment based on the claims already presented rather than by surprising Appelleeand the court with new claims. Id." Id. at ¶ 27. (Emphasis added.)
 {¶ 74} In any event, even if appellees had plead a Title IX claim, it would not have had merit. Title IX prohibits any person from excluding anyone from participation in an education program receiving federal financial assistance on the basis of sex. There is no evidence that Samantha was excluded from participating in any such program.
 {¶ 75} By virtue of the foregoing analysis, construing all evidence in a light most favorable to appellees, there are no genuine issues of material fact and only questions of law remain. As a matter of law, none of the exceptions to political subdivision immunity apply, and appellant is entitled to immunity from the claims asserted by appellees. Appellant's first assignment of error is well taken.
 {¶ 76} Appellant has made no argument in support of its second assignment of error that it was entitled to an order reconsidering the trial court's denial of its motion for summary judgment, as required by App. R. 16. For this reason, the assigned error is not *Page 21 
well taken. In any event, in light of our disposition of appellant's first assignment of error, its second assignment of error is denied as moot.
 {¶ 77} For the reasons stated in the Opinion of this court, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.
 COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur. *Page 1