NATALE, Appellant,

v.

EVERFLOW EASTERN, INC., et al., Appellee.

[Cite as *Natale v. Everflow E., Inc.*, 195 Ohio App.3d 270, 2011-Ohio-4304.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2010–T–0088.

Decided Aug. 26, 2011.

Morganstern, MacAdams & DeVito Co., L.P.A., and Michael A. Partlow; and Richard L. Goodman Co., L.P.A., and Richard L. Goodman, for appellant.

Gallagher, Sharp, Fulton & Norman, Thomas H. Cabral, Colleen R. Del Balso, and Holly Olarczuk–Smith, for appellee.

---

TIMOTHY P. CANNON, Presiding Judge.

{¶ 1} Appellant, Paul C. Natale, appeals the summary judgment of the Trumbull County Court of Common Pleas entered in favor of appellee, Everflow Eastern, Inc., on appellant's claims based on nuisance. For the reasons that follow, we affirm.

{¶ 2} Appellant filed a complaint against Everflow, alleging that appellant is the owner of a residence located at 2220 Tod Avenue in Warren, Ohio. He alleged that in April 2004, Everflow erected an oil and gas well and oil and gas storage tanks on the property of his next-door neighbor, Kevin Harris. Appellant alleged that the location of these tanks has created such an offensive smell, sight, and noise that he has been deprived of the enjoyment of his property and that Everflow has increased the level of flood water on his property.

{¶ 3} The complaint contained four claims against Everflow. Count I alleged nuisance. Count II sought an injunction against the alleged nuisance. Count III alleged the violation of local zoning ordinances. Count IV alleged intentional misconduct, specifically, that Everflow intentionally erected the oil and gas tanks near appellant's property in order to annoy, harass, and retaliate against him.

{¶ 4} Subsequently, Everflow filed a motion for summary judgment, arguing that appellant's claims were barred because its well and tanks are in compliance with all state and local requirements.

{¶ 5} Appellant filed a brief in opposition to Everflow's motion for summary judgment. In support, appellant submitted an affidavit in which he conceded that Everflow had obtained a zoning variance and a permit from the city of Warren and a permit from the Ohio Department of Natural Resources allowing it to drill an oil and gas well on Harris's property. It is undisputed that Everflow obtained all necessary permits and is in compliance with all applicable regulations with respect to the location and operation of the well and tanks.

{¶ 6} Appellant further stated in his affidavit that the well is located about 70 feet from his property line and about 200 feet from his house. He said that the storage tanks are located 15 feet from his property line. He said that the tanks are located on about five feet of fill dirt near his property, making it unsafe and impossible to build any other structures on it.

{¶ 7} Further, appellant stated that the well is noisy because of a squeaky and screeching pump shaft that occasionally wakes him up at night and sounds like a "washing machine." He also said the storage tanks emit a foul-smelling odor

from the mixture of brine water and oil, which, he said, has "dampened" any outdoor recreational use of his property.

{¶ 8} Appellant said that to facilitate the installation of the well and tanks, Harris filled in the floodplain, causing water to be diverted onto appellant's property, causing it to flood.

{¶ 9} Appellant stated that Everflow deliberately placed the well and storage tanks close to his property to retaliate against him for refusing to grant an easement to Everflow across his property when Everflow previously wanted to drill a well on another parcel.

{¶ 10} Appellant further said that the "pump jack" on the well creates a significant noise and is the only such pump jack out of the 350 wells that Everflow has drilled throughout the area and the only one that makes such a noise.

{¶ 11} The trial court entered summary judgment in favor of Everflow on all of appellant's claims against it. The court found that appellant's evidence with respect to Everflow's dumping fill, removing trees from appellant's property, and locating its well on the Harris property after obtaining city and state approval was insufficient to establish a nuisance. The court also found that the placement of the well and its operation did not constitute a nuisance based on negligence. Further, the court found that the operation of the well was not a nuisance per se because the operation of the well was pursuant to state approval. With respect to appellant's claim based on Everflow's alleged violation of local zoning ordinances, the court found that appellant's claim was barred because "the State of Ohio has preempted local regulation in regard to oversight of oil and gas drilling operations." Finally, the court found no that evidence was presented to establish any intentional misconduct with respect to the location or operation of the well.

{¶ 12} Appellant appealed the trial court's judgment, asserting three assignments of error. For his first assigned error, appellant alleges:

{¶ 13} "The trial court erred as a matter of law by granting appellee's motion for summary judgment and dismissing appellant's claims based upon an improper weighing of the evidence."

{¶ 14} Appellate courts review a trial court's grant of summary judgment de novo. *Alden v. Kovar*, 11th Dist. Nos. 2007–T–0114 and 2007–T–0115, 2008-Ohio-4302, 2008 WL 3892181, ¶ 34, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. The *Brown* court held, "[W]e review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735,

741, 607 N.E.2d 1140. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.

{¶ 15} In order for summary judgment to be granted, the moving party must prove the following:

{¶ 16} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 17} In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, the Supreme Court of Ohio held:

{¶ 18} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis omitted.)

{¶ 19} If the moving party satisfies its burden, then the nonmoving party has the burden of providing evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).

{¶ 20} The term "nuisance" designates a distinct tort, consisting of anything wrongfully done or permitted that unreasonably interferes with another in the enjoyment of his property. *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 436, 28 O.O. 369, 55 N.E.2d 724. "It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally." Id. at 432. To maintain an action for nuisance, there must be a real, material, and substantial injury. *Eller v. Koehler* (1903), 68 Ohio St. 51, 55, 67 N.E. 89. "Damages for nuisance may include diminution in the value of the property, costs of repairs, loss of use of the property, and compensation for annoyance, discomfort, and inconvenience." *Banford v. Aldrich Chem. Co., Inc.,* 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 17.

{¶ 21} Nuisances are classified as absolute nuisances or qualified nuisances. *State ex rel. R.T.G., Inc. v. State,* 98 Ohio St.3d 1, 2002-Ohio-6716, 780

N.E.2d 998, ¶ 59. "An absolute nuisance, or nuisance *per se*, consists of [1] [an] intentional act resulting in harm, [2] an act involving * * * unlawful conduct causing unintentional harm, or [3] a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault." *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraph one of the syllabus.

{¶ 22} In contrast, "[a] qualified nuisance, or nuisance dependent on negligence, consists of an act lawfully but so negligently * * * done as to create [an] unreasonable risk of harm, which in due course results in injury to another." Id. at paragraph two of the syllabus. See also *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 15, fn. 4; *Taylor*, 143 Ohio St. 426, 28 O.O. 369, 55 N.E.2d 724, at paragraphs two and three of the syllabus.

{¶ 23} Liability for a qualified nuisance may also be based on the violation of a local ordinance, which is known as negligence per se. *Shroades v. Rental Homes, Inc.* (1981), 68 Ohio St.2d 20, 25, 22 O.O.3d 152, 427 N.E.2d 774; *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 38, quoting *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph two of the syllabus. ("[I]t is settled law that '[w]here a legislative enactment imposes upon any person a specific duty for the protection of others,' the failure to perform that duty is negligence per se").

{¶ 24} An absolute or qualified nuisance can be pursued as a public or private nuisance. *Brown*, 87 Ohio App.3d at 712, 622 N.E.2d 1153. Because appellant does not allege a public nuisance, that category of nuisance is not relevant here.

{¶ 25} In *Brown*, the court set forth the requirements of maintaining a qualified private nuisance, as follows:

{¶ 26} "A civil action based upon the maintenance of a qualified private nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury. *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 275, 595 N.E.2d 855. In such a case, negligence must be alleged and proven to warrant a recovery. Id. at 276, 595 N.E.2d 855, citing *Taylor*, 143 Ohio St. at 441, 55 N.E.2d 724." *Brown* at 715.

{¶ 27} Appellant argues that the trial court erred in weighing the credibility of the witnesses in entering summary judgment. In support of this argument, he draws our attention to the court's comment in its judgment that there was no

"credible" evidence to establish intentional misconduct in locating the well. However, that comment was harmless in light of the fact that there was no proper Civ.R. 56(C) evidence presented from which the court could have found liability based on the alleged intentional misconduct of Everflow. Appellant's opinion in his affidavit that Everflow contracted with Harris to construct a well on his property in retaliation for appellant's previous refusal to grant it an easement is nothing more than mere speculation and conjecture and could not support a claim for intentional misconduct.

{¶ 28} In further support of appellant's "weighing" argument, appellant notes that the trial court commented in its judgment that there was "insufficient" evidence of a nuisance presented. When considered in context, in finding that the evidence was insufficient, the court was merely noting that there was no proper evidence submitted in support of such claim. It is well settled that the concepts of sufficiency and weight of the evidence are legally distinct. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. The court's use of that term does not imply that the court weighed the evidence in ruling on summary judgment.

{¶ 29} In support of appellant's claim based on an absolute nuisance arising from intentional misconduct, appellant relies on his affidavit, in which he stated (1) that Everflow placed the well and storage tanks near his property to retaliate against him and (2) that Everflow removed trees from his property. However, appellant's previous deposition testimony directly contradicted his affidavit. While appellant stated in his affidavit that Everflow intentionally located the well near his property to retaliate against him for refusing to grant it an easement on his property, in his deposition he said that he had no evidence that Everflow had retaliated against him. In fact, it is undisputed that appellant's neighbor Harris chose the location of the well and tanks. Further, while appellant stated in his affidavit that Everflow had cut down his trees, he made no claim and stated no cause of action in his complaint for the cutting of trees. The only claim made in this regard was damage as a result of the diversion of surface water. In addition, although appellant stated in his affidavit that due to the filling in of the flood plain and the location of the well and tanks, he has experienced flooding, in his deposition he testified that he has not experienced any flood damage. "An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, paragraph three of the syllabus.

{¶ 30} We therefore hold that the trial court did not engage in improper weighing of the evidence in ruling on Everflow's motion for summary judgment.

{¶ 31} Appellant's first assignment of error is overruled.

{¶ 32} For his second assignment of error, appellant contends:

{¶ 33} "The trial court erred as a matter of law by granting appellee's motion for summary judgment and dismissing appellant's claim of nuisance, where the record reveals that the well in question demonstrates appellee's negligence and negligence *per se*."

{¶ 34} Appellant argues that if he has not shown a nuisance based on Everflow's intentional misconduct, he has also submitted evidence of a nuisance based on Everflow's negligence per se or simple negligence.

{¶ 35} First, appellant argues that Everflow was negligent in obtaining its permits. However, he has failed to cite any authority in support of the proposition that negligence in obtaining a permit can somehow give rise to a claim for nuisance, let alone nuisance per se. Therefore, the argument lacks merit pursuant to App.R. 16(A)(7).

{¶ 36} Next, appellant argues that Everflow violated Section 731.06 of the Codified Ordinances of the city of Warren, Ohio, with respect to the location of the well and tanks, resulting in negligence per se. That section provides that no person shall operate any oil or gas well in the city in such a manner as to be injurious, noxious, offensive, or dangerous to the health, safety, welfare, or property of others. Appellant's reliance on *Kooyman v. Staffco Constr., Inc.*, 189 Ohio App.3d 48, 2010-Ohio-2268, 937 N.E.2d 576, is misplaced. In *Kooyman*, the Second District held:

{¶ 37} "Not every violation of a provision of law or ordinance constitutes negligence per se. * * * Where, for the safety of others, a legislative enactment commands or prohibits the doing of a specific act, and there is a violation of such an enactment by one who has a duty to obey it, such a violation constitutes negligence per se. * * * Where, on the other hand, a legislative enactment for the safety of others sets forth a rule of conduct in general or abstract terms, liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case, and negligence per se has no application. * * *." Id. at ¶ 19.

{¶ 38} Section 731.06 of the Warren ordinances does not command or prohibit the doing of a specific act. To the contrary, the section sets forth a rule of conduct in general terms, merely providing that no one may operate a well in such a way as to be dangerous to others. As a result, the violation of the ordinance does not result in negligence per se, and any liability on the part of Everflow must be determined using the ordinary test of negligence.

{¶ 39} Appellant alternatively argues that Everflow is liable based on its commission of a qualified nuisance, i.e., that Everflow acted so negligently as to unreasonably interfere with appellant's use and enjoyment of his property. In this respect, a qualified nuisance is "essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury." *R.T.G.*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 59.

{¶ 40} However, appellant has failed to meet his burden of presenting any evidence that Everflow's activities have unreasonably interfered with the use and enjoyment of his land. His affidavit alleging that Everflow had damaged him by flooding his property, as noted above, is directly contradicted by appellant's prior deposition and cannot create a genuine issue of material fact as to whether Everflow is liable for a qualified nuisance. Further, appellant's statement in his affidavit that Everflow's activities result in noise that occasionally disturbs his sleep and an odor of oil is no different from any oil-well operation. Appellant has therefore failed to present evidence that any activities of Everflow resulted in the negligent maintenance of a condition that created an unreasonable risk of harm, resulting in injury. *Brown,* 87 Ohio App.3d at 715, 622 N.E.2d 1153.

{¶ 41} We therefore hold that the trial court did not err in granting summary judgment in favor of appellee on appellant's qualified-nuisance claim based on negligence or negligence per se.

{¶ 42} Appellant's second assignment of error is overruled.

{¶ 43} For his third and final assignment of error, appellant contends:

{¶ 44} "The trial court erred as a matter of law by granting appellee's motion for summary judgment and dismissing appellant's claims on the basis of preemption and the lack of a private cause of action."

{¶ 45} Appellant claims that the trial court erred in finding that the state law, R.C. Chapter 1509, "has preempted local regulation in regard to oversight of oil and gas drilling operations in the State of Ohio." Since appellant's qualified-nuisance claim is based in part on Everflow's alleged violation of Warren ordinances, i.e., negligence per se, we consider whether these ordinances are preempted by R.C. 1509.02. That section provides:

{¶ 46} "The division [of mineral resources management] has sole and exclusive authority to regulate the permitting, location, and spacing of oil and gas wells and production operations within the state. The regulation of oil and gas activities is a matter of general statewide interest that requires uniform statewide regulation, and this chapter and rules adopted under it constitute a comprehensive plan with respect to all aspects of the locating, drilling, and operating of oil and gas wells within this state * * *."

{¶ 47} The powers of local self-government conferred to a municipality by Section 3, Article XVIII of the Ohio Constitution are limited to the extent that they conflict with the general laws of the state. *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph one of the syllabus. "[T]he test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." Id. at paragraph two of the syllabus; see also *Smith Family Trust v. Hudson Bd. of Zoning & Bldg. Appeals,* 9th Dist. No. 24471, 2009-Ohio-2557, 2009 WL 1539065, at ¶ 8–12 (considering whether a local ordinance was preempted by R.C. 1509.02).

{¶ 48} Appellant argues that Everflow's installation and/or operation of the well and storage tanks violated the following provisions of the Warren ordinances: Section 731.04(i), providing that storage tanks used "in connection with any producing well" may not be "located within 200 feet of a residence of a platted lot or parcel of land or within 200 feet of any building or structure unless permittee obtains a waiver releasing such 200 foot setback"; and Section 731.06, providing that it is impermissible to drill, operate, or maintain "any oil or gas well within the limits of the City in such a manner as to be injurious, noxious, offensive or dangerous to the health, safety, welfare, comfort or property of individuals."

{¶ 49} There is no question in this case that the city of Warren and the state of Ohio have approved and licensed Everflow's use. Further, R.C. 1509.02 states that the "regulation of oil and gas activities is a matter of general statewide interest that requires uniform statewide regulation, and this chapter and rules adopted under it constitute a comprehensive plan with respect to *all aspects* of the *locating,* drilling, and *operating* of oil and gas wells within this state * * *." (Emphasis added.)

{¶ 50} Since appellant's claims are clearly based on the *location* and *operation* of the oil and gas well, it is manifest that the ordinances referred to by appellant are preempted by the clear, unequivocal language in the statute.

{¶ 51} According to state safety regulations governing the drilling and operation of wells, "[o]il production tanks shall be set * * * a minimum of one hundred (100) feet from existing inhabited structures." Ohio Adm.Code 1501:9–9–05(A)(2). Sec. 731.04(i) of the Warren ordinances conflicts with this provision in that it requires a minimum 200–foot setback from residential structures and, therefore, is preempted by the state regulation. As a result, appellant cannot rely on the alleged violation of Section 731.04(i) to support a claim of qualified nuisance. In any event, appellant testified at his deposition that both the wellhead and the tanks are more than 200 feet from his house. Thus, there is no violation of the local ordinance or state regulation with respect to the location of the storage tanks.

{¶ 52} Appellant argues, however, that he can still maintain an action based on a private qualified nuisance pursuant to Section 731.06. However, nothing in that ordinance grants a "private qualified nuisance" to any individual in the city. To the contrary, the ordinance simply states (as do ordinances and zoning resolutions in most communities) that no oil or gas wells may be operated in such a way as to "be injurious, noxious, offensive or dangerous to the health, safety, welfare, comfort or property of individuals." This does not equate to the right of an individual to maintain a private nuisance cause of action for a use *authorized* by the local community, and whose *location* and *operation* are preempted by state law.

{¶ 53} In light of R.C. 1509.02, it is clear that no private right of action exists pursuant to the referenced ordinances of the city of Warren. However, even if such a cause of action did exist, appellant would have been required to submit evidentiary material to establish that the well in question was not operating within the normal limits required by the Ohio Revised Code, the Ohio Administrative Code, and the regulations adopted by the Ohio Department of Natural Resources.

{¶ 54} The evidentiary material submitted clearly established that the well is operating within normal limits and that it was properly permitted and approved by both the state and the city. Appellant does not raise a genuine issue of fact in this regard. In his response to Everflow's motion for summary judgment, appellant devotes all of one paragraph to the claim of "absolute" or "qualified nuisance." He asserts simply that being in the oil and gas business is an inherently dangerous activity. However, in order to maintain a private nuisance claim, appellant would have to prove that the well was operating in an unreasonable manner, i.e., outside the normal limits allowed by the above-stated laws and regulations. The closest contention presented in this regard is appellant's assertion that the pump jack on the well creates "significant noise" and is the "only such pump jack out of the approximately 350 wells that Everflow has drilled throughout the area and the only one that makes such noise." Appellant cited the attached portion of the deposition of George Strawn II, field supervisor for Everflow, as the authority for this contention. We note that this deposition was not filed with the court or properly authenticated, so it could not properly be considered on summary judgment. However, even if it was, the testimony does not support appellant's position. The partial transcript reveals that Strawn testified that this type of well makes no more noise than the other alternative, the rabbit wells.

{¶ 55} Appellant therefore failed to demonstrate that he has a right to maintain a private nuisance action based on an alleged violation of the Warren ordinances. Issues concerning the well operation have been preempted by state law. Ever-

flow established that this well was operating properly. If any private nuisance cause of action existed, appellant was obligated, but failed, to establish with appropriate evidentiary material that this well operates in a manner unreasonably more deficient than other properly permitted wells.

{¶ 56} We therefore hold that the trial court did not err in granting summary judgment to Everflow on appellant's private nuisance action.

{¶ 57} Appellant's third assignment of error is overruled.

{¶ 58} For the reasons stated in the opinion of this court, the assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Judgment affirmed.

RICE, J., concurs.

GRENDELL, J., dissents.

DIANE V. GRENDELL, Judge, dissenting.

{¶ 59} Plaintiff-appellant, Paul C. Natale, has raised a genuine issue of material fact as to whether defendant-appellee, Everflow Eastern, Inc., is liable under a theory of qualified nuisance for unreasonably interfering with the enjoyment of his residential property. Accordingly, it was error for the trial court to grant summary judgment in Everflow's favor on this issue. I respectfully dissent from the majority's decision to affirm.

{¶ 60} A qualified nuisance "consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraph two of the syllabus. "Damages for nuisance may include diminution in the value of the property, costs of repairs, loss of use of the property, and compensation for annoyance, discomfort and inconvenience." *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, at ¶ 17.

{¶ 61} In opposition to Everflow's motion for summary judgment, Natale submitted an affidavit containing the following averments:

3. I own and live on a tract of land in the City of Warren, Ohio. * * * My property is located immediately adjacent to the land of Defendant, Kevin Harris. The majority of my property and the property of Kevin Harris is located within the flood plain of Warren, Ohio due to the close proximity of both properties to the Mahoning River. I have attached * * * a copy of a survey conducted by Lynn, Kittinger & Noble confirming that the well and tank erected by Eastern Everflow * * * are in the flood zone map.

\* \* \*

8. Everflow, after being advised by me that the well location was in the flood plain established by the Federal Emergency Management Agency ("FEMA"), failed to file with the City the appropriate Flood Hazard Area Flood Plain Permit Application required by Chapter 1331 of the Warren City Ordinances.

9. In its application for variance, Everflow misstated the distance of the well from my property. The well is located approximately 70 feet from my property line and approximately 200 feet from my house. The storage tanks are located approximately 15 feet from my property line. However, fill used to support the tanks [is] encroaching on my property. Without my approval, Everflow removed several trees on my property.

10. The tanks are located on approximately five (5) feet of fill in close proximity to my property makes [sic] it unsafe and incapable of constructing any other structure on it, as I had planned to do prior to the oil and gas well being present.

\* \* \*

13. The well is so noisy because of a squeaky and screeching pump shaft which at worst wakes me up at night and at best sounds like a "washing machine" even when my windows are closed. In addition, the storage tanks emit a noxious and foul smelling odor from the mixture of brine water and oil. This odor [is] so foul smelling that I smell it when I am out in my yard. It has dampened any outdoor recreational use of my property.

14. To facilitate the installation of the well and tanks, Mr. Harris filled in the flood plain causing water to be diverted onto my property causing it to flood and causing standing water to remain on the property.

15. As a result of close proximity of the well and tanks to my property, it has suffered diminution in value due to the fact that it cannot be sold to anyone seeking FHA financing. FHA financing accounts for approximately 50% of all housing sales in Ohio. FHA will not finance any real estate located within 300 feet from an oil and gas well. Everflow's well is located within this 300 feet restriction making an FHA sale of my property impossible.

\* \* \*

19. The well is only 200 feet from my home.

\* \* \*

21. As a direct result of the filling in of the flood plain and location of the well and tanks, I have experienced flooding on my property. \* \* \* Because of the standing water, it has attracted mosquitoes in the summer which I have not had before. In addition, my trees are in danger of being lost because of the

standing water which is decaying them. And finally, my barn is in danger of being flooded because it is closer to the Mahoning River than my home is.

{¶ 62} The allegations contained in Natale's affidavit readily demonstrate a genuine issue as to whether Everflow so negligently and/or carelessly installed and operates the drilling equipment in its location that Natale has suffered damages.

{¶ 63} Specifically, Natale has alleged that the use and enjoyment of his property has been compromised in the following ways: there is constant noise, at times sufficient to disturb his sleep; there is an offensive odor hindering the recreational use of his yard; and there is flooding and standing water that breeds mosquitoes and threatens a barn and trees in his yard. These allegations, construed most strongly in Natale's favor, are sufficient to create a genuine issue of material fact as to whether Everflow is liable for a qualified nuisance, inasmuch as they demonstrate a loss of the use of Natale's property through annoyance, discomfort, and inconvenience. Cf. *Banford*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, at ¶ 26 ("[c]ases supporting recovery for personal discomfort or annoyance involve either excessive noise, dust, smoke, soot, noxious gases, or disagreeable odors as a premise for awarding compensation"), and the cases cited therein; *Brown v. Scioto Cty. Commrs.* (1993), 87 Ohio App.3d 704, 715, 622 N.E.2d 1153 ("[t]o entitle adjoining property owners to recover damages for the maintenance of a nuisance, it is not necessary that they should be driven from their dwellings, or that the defendants' acts create a positive unhealthy condition; it is enough that their enjoyment of life and property is rendered uncomfortable, for in some circumstances discomfort and annoyance may constitute a nuisance").

{¶ 64} The majority, however, discredits Natale's evidence in two ways. First, the majority states that Natale's allegations of flooding are "directly contradicted by [his] prior deposition." Majority opinion at ¶ 40. The majority is referring to a statement made by Natale in a deposition taken in 2006, four years prior to his affidavit in the current lawsuit, that he was "not seeking actual damages" as a result of the flooding. The majority misinterprets Natale's statement, which signifies only that he did not seek recovery for damages to his property; rather, Natale was seeking damages for the loss of use and enjoyment of his property. Likewise, in the present lawsuit, Natale's claim is for nuisance damages, which may consist of "diminution in the value of the property" and "compensation for annoyance, discomfort, and inconvenience." *Banford*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, at ¶ 17. The fact that Natale is not claiming or has not alleged "actual damages" has no bearing on the merits of this lawsuit. Natale has claimed a diminution in the value of his property as a result of flooding caused by the installing of the tanks and well, in addition to annoyance,

discomfort, and inconvenience (standing water, mosquitoes, etc.). These allegations are substantiated by his prior deposition testimony. These damages are sufficient to state a claim for qualified nuisance.

{¶ 65} The majority also discredits the allegations in Natale's affidavit by noting that excessive noise and the odor of oil are "no different from any oil well operation." Majority opinion at ¶ 40. The fact that noise and odor are inherent in drilling operations is not a valid basis for dismissing a claim of qualified nuisance. Natale does not allege that Everflow's operation of the well was negligent or careless; rather, it is the location of Everflow's operation that was negligent in that it has unreasonably interfered with Natale's enjoyment of his property.[1]

{¶ 66} For the foregoing reasons, I would reverse the judgment of the lower court with respect to Natale's claim for qualified nuisance.

---

1. Cf. The following description of a qualified nuisance: "As to nuisances to one's *lands*: if one erects a smelting house for lead so near the land [of] another, that the vapor and smoke kills his corn and grass, and damages his cattle therein, this is held to be a nuisance. And by consequence it follows, that if one does any other act, in itself lawful, which yet be done in that place necessarily tends to the damage of another's property, it is a nuisance: for it is incumbent on him to find some other place to do that act, where it will be less offensive." (Emphasis sic.) *Angerman v. Burick*, 9th Dist. No. 02CA0028, 2003-Ohio-1469, 2003 WL 1524505, at ¶ 10, quoting 3 Blackstone (1768), Commentaries on the Laws of England 217–218.