[Cite as *Wright v. Mar-Bal, Inc.*, 2013-Ohio-5647.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| LESTER WRIGHT, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-G-3112** |
| MAR-BAL INC., et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 11W001025.

Judgment: Affirmed.

*Paul W. Flowers*, Paul W. Flowers Co., L.P.A., Terminal Tower, 35th Floor, 50 Public Square, Cleveland, OH 44113-2216; *Frank Gallucci, III* and *Michael D. Shroge*, Plevin & Gallucci Co., L.P.A., 55 Public Square, Suite 2222, Cleveland, OH 44113 (For Plaintiff-Appellant).

*Carolyn M. Cappel*, *Brandon M. Fairless*, *Nancy A. Noall*, *Shawn W. Maestle*, and *Julius E. Trombetto*, Weston Hurd LLP, The Tower at Erieview, 1301 E. 9th Street, Suite 1900, Cleveland, OH 44114-1862 (For Defendants-Appellees).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant Lester Wright appeals the judgment of the Geauga County Court of Common Pleas granting Appellee Mar-Bal, Inc.'s motion for summary judgment. Based on the following, we affirm.

{¶2} Wright brought an intentional tort action under R.C. 2745.01, alleging that Mar-Bal, Inc. ("Mar-Bal") his employer, was liable for intentional tortious conduct that

resulted in his permanent injury and disability on July 15, 2009, when he lost his right hand in a mechanical press.

**{¶3}** Wright was hired as a maintenance technician by Mar-Bal in December 2006. Mar-Bal compounds and molds Thermoset composite products using injection molding machines. As a maintenance technician, Wright's duties included inspecting and maintaining the mechanical presses that were used to create plastic parts.

**{¶4}** Upon his hiring, Wright received both an employee handbook and an "Outline for New Hire Safety Orientation Program." This training material explained Mar-Bal follows OSHA's requirement that, before performing maintenance on any machine, the employee must first lockout the machine's power source to prevent the machine from being inadvertently powered. The manual also explained that any employee who "intentionally fails to follow lockout/tagout procedures will face disciplinary action."

**{¶5}** Wright signed the "Employee Sign-Off Sheet Energy Control (Lockout/Tagout) Procedure/Awareness" form acknowledging that he received a copy of Mar-Bal's lockout/tagout procedure; he understands the procedure; and he will "support and follow [it in his] daily work at Mar-Bal, Inc." The purpose of the lockout/tagout procedure was outlined in the material received by Wright:

> This procedure establishes the minimum requirements set forth for the lockout or tag out energy isolating devices. It shall be used to ensure that the machine or equipment are isolated from all potentially hazardous energy, and locked out or tagged out before employees perform any servicing or maintenance activities where the unexpected energizing, start-up or release of stored energy could cause injury.

2

{¶6} The accident at issue occurred on injection molding machine number 4. This machine could be placed in three modes—manual mode, which is not used for production; semi-automatic mode, used to run production; and automatic mode. The record indicates that when placed in manual mode, if the door guard is open, the clamp cannot be closed. When in manual mode, the cylinder can be operated with the door guard open.

{¶7} When running production in the semi-automatic mode, the door guard automatically closes and the machine cycle starts. After the machine cycle is complete, the door guard automatically opens. After the door opens, the operator reaches in and removes the completed part from the machine.

{¶8} During production in automatic mode, the machine runs continuously, and the door guard does not open between each cycle. When placed in automatic mode, the finished plastic part falls onto a conveyer and the operator removes the finished part from the conveyer. The operator does not reach into or near the moving parts of the machine. If the machine is either in semi-automatic or automatic mode, it will not operate with the door guard open.

{¶9} The affidavit of Bob Fowler, maintenance supervisor at Mar-Bal, outlined the proper procedure for cleaning out the plastic injection molding machine. Mr. Fowler averred the following:

> To perform the clean out, the maintenance person informs the machine operator he is going to perform a clean out. The operator is not trained to perform a clean out. The operator is not trained to perform and does not perform any functions on the machine during the injection housing clean out process. The maintenance person takes the machine out of the production mode and places it in manual mode using the machine control panel. The maintenance person then reverses the cylinder to its rearmost position. After

moving the cylinder to the rear, the maintenance person locks out and tags out the machine at the electrical panel. The maintenance person places their personal lock and tag, issued to them by the company on the electrical panel. After the machine is locked out and tagged out, the maintenance person removes the molds from the injector housing clean out cover. The maintenance person then manually removes any material from inside the injection housing clean out. After conducting the clean out, the maintenance person replaces the cover and unlocks the machine and re-energizes it. The entire clean out process takes approximately one to five minutes.

{¶10} On the date of the accident, Wright was working third shift, which is the shift that cleans the injection housing. Wright first performed a visual safety check. After performing his visual safety check, Wright cleaned out the injection housing. Instead of following the lockout/tagout procedure as described above, Wright claims that he signaled the operator to put the machine in semi-automatic, automatic mode. Wright then climbed onto the machine and observed the door guard open. Wright pulled the material out of the cylinder housing of the machine; the machine began to cycle; and his hand was caught in the machine.

{¶11} In his complaint, Wright alleged that his injuries were due to the deliberate and intentional conduct of Mar-Bal in requiring him to clean the housings of the injection molding machine when "safety protocols and procedures were not created, enforced, effectuated or followed, within the meaning of R.C. 2745.01(B) and Ohio Common Law." Wright further alleged that Mar-Bal "deliberately and intentionally required [Wright] to be placed in an inherently dangerous environment without the necessary safety equipment guarding, protection, instruction or training."

{¶12} After conducting discovery, Mar-Bal filed a motion for summary judgment. Wright filed a memorandum in opposition of summary judgment. The trial court granted

4

Mar-Bal's motion for summary judgment, finding no evidence that Mar-Bal "gave direct orders that resulted in injury to Mr. Wright. There is no evidence before the Court that Mar-Bal directed the machine operator to disengage the machine's safety doors while Mr. Wright was performing maintenance."

{¶13} It is from this judgment that Wright filed a notice of appeal and asserts the following assignment of error:

{¶14} "The trial judge erred, as a matter of law, by granting summary judgment upon plaintiff's workplace intentional tort claim."

{¶15} In order for a motion for summary judgment to be granted, the moving party must prove the following:

> (1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.

(Citation omitted.) *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996).

{¶16} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact * * *." Civ.R. 56(C). Material facts are those that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5

**{¶17}** If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Civ.R. 56(E) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**{¶18}** Summary judgment is appropriate pursuant to Civ.R. 56(E) if the nonmoving party is confronted by evidentiary material that establishes no genuine issue of material fact, the material establishes non-liability of the moving party, and the non-moving party does not meet this reciprocal burden.

**{¶19}** Appellate courts review a trial court's grant of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997), citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120 (1980).

**Wright's Intentional Tort Claim**

**{¶20}** If an employee is injured in the course of employment, his redress typically is limited through the Ohio Workers' Compensation Act, R.C. 4123.01, et. seq. This is a comprehensive system designed to compensate workers for injuries that occur during the course of and arising from employment without the need to establish fault. It also

6

includes provisions for enhanced recovery in the event of a violation of certain safety requirements. In general, in exchange for this coverage, the employer is immune from suit. The Workers' Compensation Act, however, contains certain limited exceptions to the grant of immunity, one of which exists for injuries resulting from an employer's intentional tort upon an employee. An employee may pursue an action against his or her employer pursuant to R.C. 2745.01 when an employer acts with specific intent to cause an injury. R.C. 2745.01 provides, in pertinent part:

> (A) In an action brought against an employer by an employee * * * for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
>
> (C) Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.

{¶21} In *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 263, 2010-Ohio-1027, the Ohio Supreme Court explained, "the General Assembly's intent in enacting R.C. 2745.01, as expressed particularly in 2745.01(B), is to permit recovery for employer intentional torts only when an employer acts with specific intent to cause an injury, subject to subsections (C) and (D)." *See also* 6 Larson, *Law of Workers' Compensation*, Section 103.03, at 103-7 to 103-8 (2001) (explaining that an employer "knowingly permitting a hazardous work condition to exist [and] knowingly ordering

7

employees to perform an extremely dangerous job * * * falls short of the kind of actual intention to injure that robs the injury of accidental character" (footnotes omitted)).

{¶22} In *Kaminski*, the Court expressed the following:

R.C. 2745.01 by no means places Ohio outside the national mainstream relative to employer intentional torts and the exclusivity of the workers' compensation remedy. Rather, R.C. 2745.01 appears to harmonize the law of this state with the law that governs a clear majority of jurisdictions.

'The common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury. (Footnote omitted.) 6 Larson's Workers' Compensation Law (2008), Section 103.03.'

*Kaminski*, *supra*, at 273-274.

{¶23} "[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system." *Houdek v. ThyssenKrupp Materials, N.A., Inc.*, 134 Ohio St.3d 491, 2012-Ohio-5685, ¶25. "R.C. 2745.01 limits claims against employers for intentional torts to circumstances demonstrating a *deliberate intent* to cause injury to an employee." *Id*. at ¶29 (emphasis added). Therefore, in order for Wright to recover under his intentional tort claim, he must demonstrate that Mar-Bal intended to cause him injury.

{¶24} Preliminarily, we note that in his brief, Wright analyzes his intentional tort claim pursuant to the common-law standards set forth in *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115 (1991); however, "[b]ecause R.C. 2745.01 is constitutional, the standards contained in the statute govern employer intentional-tort actions, and the statutory

8

standards apply rather than the common-law standards of *Fyffe*." *Kaminski*, *supra*, at 274.

**{¶25}** Wright maintains the evidence in the record demonstrates that Mar-Bal's management forced the service technicians to disregard the federally-mandated lockout/tagout requirements in an effort to speed up production. To support this position, Wright points to both his affidavit in support of his memorandum in opposition to Mar-Bal's motion for summary judgment and the affidavit of K. Vito Paul, a former employee of Mar-Bal.

**{¶26}** In his affidavit, Mr. Paul averred that previous supervisors had observed him performing clean-outs of the presses without employing the lockout/tagout procedures. Mr. Paul further averred that while he was told it was unsafe to perform clean-outs without shutting down the machines, he was encouraged to "do it anyways in order to increase production."

**{¶27}** Although Wright averred that his superiors had trained him to clean the injection molding machine while it remained energized so that production would not cease, his prior deposition testimony and his affidavit submitted to the State of Ohio Bureau of Workers' Compensation contradict these statements. In fact, in his deposition, Wright admitted he was never told to *not* lockout/tagout. Further, Wright acknowledged that if he had locked out/tagged out the press, the accident would have never occurred. See *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph three of the syllabus ("[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient

9

explanation, create a genuine issue of material fact to defeat the motion for summary judgment").

{¶28} Nevertheless, even if Mar-Bal had ignored these safety procedures, as averred by Mr. Paul, its conduct does not rise to the level of an employer intentional tort, i.e., a deliberate intent to injure. "An employer's failure to follow proper safety procedures might be classified as grossly negligent or wanton, but does not constitute an intentional tort." *Jefferson v. Benjamin Steel Co.*, 5th Dist. Richland Nos. 09 CA 62 & 09 CA 75, 2010-Ohio-50, ¶112, citing *Neil v. Shook, Inc.*, 2d Dist. Montgomery No. 16422, 1998 Ohio App. LEXIS 106 (Jan. 16, 1998). *See also Fickle v. Conversion Techs. Intl., Inc.,* 6th Dist. Williams No. WM-10-016, 2011-Ohio-2960, ¶48 (finding failure to provide adequate training and safety devices not sufficient to establish deliberate intent to injure); *Davis v. AK Steel*, 12th Dist. Butler No. CA2005-07-183, 2006-Ohio-596, ¶12 (finding failure to provide adequate safety devices and training does not constitute substantial certainty even under the less-stringent common-law standards).

{¶29} Construing all materials in a light most favorable to Wright, the nonmoving party, we find nothing in the record demonstrating a genuine issue of fact that would allow one to conclude Mar-Bal committed a tortious act with the intent to injure Wright or that Mar-Bal acted with deliberate intent to cause him to suffer an injury for purposes of R.C. 2745.01(A) and (B).

{¶30} Wright also has not submitted evidentiary material sufficient to create a genuine issue of fact that would allow the presumption set forth in R.C. 2745.01(C). Pursuant to that section, deliberate removal of a safety guard by an employer "creates a

10

rebuttable presumption" that the removal was done with intent to injure. R.C. 2745.01(C) provides: "Deliberate removal by an employer of an equipment safety guard or deliberate misrepresentations of a toxic or hazardous substance creates a rebuttable presumption that the removal or misrepresentation was committed with intent to injure another if an injury or occupational disease or condition occurs as a direct result."

{¶31} "The plain meaning of the word 'remove' is 'to move by lifting, pushing aside, or taking away or off.' *Webster's Third New International Dictionary* 1921 (1986)." *Houdek v. ThyssenKrupp Materials, N.A., Inc.*, *supra*, at ¶27. In *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, ¶2, the Ohio Supreme Court held that "as used in R.C. 2745.01(C), 'equipment safety guard' means a device designed to shield the operator from exposure to or injury by a dangerous aspect of the equipment, and the 'deliberate removal' of an equipment safety guard occurs when an employer makes a deliberate decision to lift, push aside, take off, or otherwise eliminate that guard."

{¶32} Wright argues that his co-worker, Imedla Ramirez, who was operating press number 4 prior to the clean-out, was not trained with respect to the lockout/tagout procedure. Ramirez was trained, however, to leave the door open on the machine so that it would not operate. Wright maintains that Ramirez "failed to comply with the instructions that she was not supposed to do anything with the presses while maintenance was being performed." Wright asserts that "reasonable minds could certainly conclude" that Ramirez deliberately pressed the button to resume production.

{¶33} The issue is not whether Ramirez deliberately pressed the button. The issue is what her intention was in doing so. There is no evidence in the record to

11

establish that Ramirez—an operator of the machine, not a manager—acted deliberately with intent to operate the equipment in violation of the safety protocol. To the contrary, Ramirez's deposition indicates that she believed Wright indicated it was "okay" to "push the button to close the door" on the machine. There is no evidence in the record that Mar-Bal deliberately removed an equipment safety guard from injection molding machine number 4.

{¶34} Wright's assignment of error is without merit.

{¶35} The judgment of the Geauga County Court of Common Pleas is hereby affirmed.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.