[Cite as *McWreath v. Cortland Bank*, 2015-Ohio-5457.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO


LARRY J. MCWREATH,           :        **O P I N I O N**

     Plaintiff-Appellant,       :

    - vs -                      :        **CASE NO. 2013-T-0112**

CORTLAND BANK, et al.,       :

     Defendants-Appellees.     :


Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2009 CV 00182.

Judgment:  Affirmed.


*L. Bryan Carr*, Carr, Feneli & Carbone Co., L.P.A., 1392 S.O.M. Center Road, Mayfield Heights, OH  44124 (For Plaintiff-Appellant).

*Elizabeth M. Hill*, Ulmer & Berne, L.L.P., 1100 Skylight Office Tower, 1660 West Second Street, Cleveland, OH  44113-1448 (For Defendants-Appellees, Cortland Bank and Charles Commons).

*John T. McLandrich*, *Frank H. Scialdone*, and *Tami Z. Hannon*, Mazanec, Raskin, Ryder & Keller Co., L.P.A., 100 Franklin's Row, 34305 Solon Road, Solon, OH  44139 (For Defendant-Appellee, Donna Rish).


TIMOTHY P. CANNON, P.J.

{¶1}   This appeal is from a final order of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellees, Donna Rish, Charles Commons, and Cortland Bank, on the following three remaining claims in the underlying civil action: intentional interference with expectancy interest; civil conspiracy; and abuse

of process. Appellant, Larry J. McWreath, maintains that appellees' summary judgment motions should have been overruled as genuine issues of material facts remain as to these claims. Based on the following, we affirm the decision of the trial court.

{¶2} This case centers on a series of events involving appellant; his elderly neighbor, the late Mr. Kopervac; Ms. Rish, an investigator for the Trumbull County Probate Court; and Mr. Commons, a vice-president of Cortland Bank. The subject matter of the action concerns whether appellees engaged in acts that wrongfully required appellant to defend himself in separate legal proceedings before the Trumbull County Probate Court.

{¶3} Appellant filed a complaint against appellees asserting nine causes of action: (1) negligence; (2) defamation; (3) interference with expectancy interest; (4) intentional interference with contract; (5) fraud; (6) breach of contract; (7) civil conspiracy; (8) breach of obligation of good faith and fair dealing; and (9) abuse of process. In August 2009, the trial court dismissed all nine claims as to Appellee Rish and six of the claims as to Appellees Commons and Cortland Bank. Five months later, the trial court granted summary judgment for Commons and Cortland Bank on the three remaining claims. In February 2010, appellant appealed the foregoing two rulings to this court.

{¶4} Previously, in *McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, this court upheld the granting of summary judgment on the following claims: negligence; defamation; intentional interference with contract; fraud; breach of contract; and breach of obligation of good faith and fair dealing. This court reversed the granting of the Civ.R. 12(B)(6) motion to dismiss in part, and the case was

2

remanded for further proceedings on the aforementioned three claims in regard to all three appellees. After remand and further discovery, the trial court granted summary judgment on the remaining claims in favor of all three appellees. This appeal concerns the propriety of the grant of summary judgment on the remaining claims.

{¶5} Appellant is a longtime resident of Vienna, Ohio. In approximately 1985, he became friends with his neighbor, Frank Kopervac, an elderly gentleman who did not have any living relatives when he died in March 2008. Through the years, appellant and members of appellant's family helped Mr. Kopervac in performing basic tasks, including grocery shopping, cleaning his home, and paying his bills. In fact, appellant and Mr. Kopervac became so close that, in 1997, Mr. Kopervac executed a new will and named appellant the sole beneficiary of his estate. Near the conclusion of Mr. Kopervac's life, his estate was worth over one million dollars, and the majority of his funds were deposited with Cortland Bank.

{¶6} On December 27, 2007, appellant took Mr. Kopervac to Cortland Bank to cash a number of checks and transfer other funds. Because Mr. Kopervac did not have any form of identification with him, the transactions could not be completed. Over the following two days, it was necessary for appellant to go to the bank on three separate occasions before he could withdraw $12,000 for Mr. Kopervac. When Commons, as vice president, ultimately approved the transaction, appellant complained about how difficult it had been to obtain the funds. During the ensuing conversation, appellant initially told Commons that he was Mr. Kopervac's grandson, but later admitted they were just close friends. Near the end of the discussion, Commons advised appellant that if he wanted to do transactions at the bank for Mr. Kopervac, it would be easier if he

3

had a power of attorney.

{¶7} One week later, Mr. Kopervac executed a power of attorney naming appellant as his attorney-in-fact. When appellant initially presented it to Cortland Bank, though, it was rejected due to a perceived problem with one of the witnesses. After this problem was resolved, Commons informed appellant the power of attorney would be accepted. Thereafter, appellant was given access to Mr. Kopervac's safety deposit box on three separate occasions in January 2008.

{¶8} Despite this, appellant still thought that Commons and Cortland Bank were trying to obstruct his access to Mr. Kopervac's funds. He further believed the bank was not paying a sufficient percentage of interest on the funds; thus, he considered whether all of Mr. Kopervac's funds should be transferred to another institution.

{¶9} Separate from the foregoing events, Mr. Kopervac's home was burglarized on January 5, 2008. Although the Vienna Police Department was called to the scene, the officers were never able to determine what actually took place; i.e., whether someone broke into the residence, or whether Mr. Kopervac was scammed by a person impersonating a policeman. Nevertheless, the investigation did reveal that $10,000 in cash, various checks, and two firearms were stolen from the home.

{¶10} In light of the burglary, questions were raised as to whether Mr. Kopervac was still capable of caring for himself. As a result, the Vienna police chief called the county probate judge and informed him of the situation. In turn, the probate judge instructed Rish, as the court investigator, to conduct an investigation. Shortly after the burglary, Rish interviewed Mr. Kopervac on two separate occasions. During at least one of the interviews, appellant and his mother were present.

{¶11} After the police chief's discussion with the probate judge, Commons also telephoned the judge to raise concerns about Mr. Kopervac's present situation. In response, the probate judge stated he was already aware of Mr. Kopervac's situation.

{¶12} On February 7, 2008, a private entity, Guardian and Protective Services, Inc. ("GAPS"), filed an application with the probate court to be appointed guardian of Mr. Kopervac's person and estate. The application alleged that Mr. Kopervac was incompetent as a result of mental incapacity. On the same day the application was filed, the probate judge issued a judgment finding that Mr. Kopervac's best interest would be served if an investigation were conducted. The judgment contained a specific order requiring Rish to conduct the investigation and to submit a written report within fourteen days. Additionally, the probate court ordered a stay of all withdrawals of funds from Mr. Kopervac's bank accounts.

{¶13} Rish submitted her written report only four days later. The report had a number of factual errors regarding appellant's relationship with Mr. Kopervac. For example, the report stated that Mr. Kopervac did not have a will and that a local attorney was presently acting as Mr. Kopervac's attorney-in-fact under the power of attorney. The report also incorrectly asserted that appellant had withdrawn $250,000 of Mr. Kopervac's funds from Cortland Bank.

{¶14} GAPS did its own investigation of Mr. Kopervac's and appellant's financial records and concluded that appellant had not engaged in any improper behavior in helping Mr. Kopervac over the preceding few years. Accordingly, the probate court rejected the Rish report, and GAPS stated to the probate court that it had no objection to appellant's appointment as guardian for Mr. Kopervac. Before the appointment could

5

be made, Mr. Kopervac died.

{¶15} Three days later, Attorney Daniel Letson submitted an application with the probate court to be appointed special administrator of the estate. The application alleged that Mr. Kopervac had died intestate and that there was reason to believe Mr. Kopervac had been exploited by a "neighbor" immediately before his death. In conjunction with the application, Attorney Letson also moved for the appointment of a special investigator. Although the probate court granted this motion, a different person was appointed special investigator; Rish played no role in the investigation during the separate estate case.

{¶16} During the estate case, appellant contends he had to expend approximately $20,000 of the estate funds in defending himself against the assertion that he stole funds from Mr. Kopervac prior to his death. No finding of wrongful conduct was ever made against him. Moreover, when appellant moved in June 2008 to admit Mr. Kopervac's will to probate, the probate court granted the motion and named appellant as executor of the estate. Ultimately, appellant inherited Mr. Kopervac's entire estate pursuant to the terms of the will.

{¶17} The record demonstrates that each of the remaining claims is predicated upon the same factual allegations. According to appellant, when Rish was first ordered to conduct an investigation into Mr. Kopervac's situation following the robbery at his home, she and Commons had a conversation in which it was agreed that appellant was using his influence over Mr. Kopervac to extort funds. Further, appellant claims Commons' motivation for conspiring with Rish was allegedly to stop appellant from transferring Mr. Kopervac's funds to another bank. This alleged conspiracy, appellant

6

maintains, was the cause of the numerous mistakes in Rish's subsequent report, including the assertion that appellant had already withdrawn $250,000 from Cortland Bank.

{¶18} Upon remand, Rish immediately moved for summary judgment on the three remaining claims. Soon thereafter, Commons and Cortland Bank also requested summary judgment. As one argument under both motions, all three appellees contended that Rish and Commons did not engage in a conspiracy to stop appellant from transferring Mr. Kopervac's funds. In support of her argument, Rish attached to her motion a copy of her answers to interrogatories presented by appellant. As part of her answer to the twelfth interrogatory, Rish averred that she could not recall ever having contact with Commons during the investigation. In their motion, Commons and Cortland Bank relied upon an excerpt from Commons' deposition, in which he denied talking directly to Rish about the Mr. Kopervac situation.

{¶19} In responding to both motions, appellant tried to create a factual dispute as to whether Rish and Commons had any direct communication prior to the issuance of her written report. First, appellant presented the affidavit of his mother, Mary McWreath. Mary averred that she was present when Rish interviewed Mr. Kopervac and appellant soon after the burglary. Mary further asserted that when appellant asked Rish whether she was conducting the investigation solely because Commons had informed her that appellant intended to withdraw Mr. Kopervac's deposits from the bank, Rish answered affirmatively. Second, appellant attached to his response an excerpt from his deposition, in which he attributed the same admission to Rish.

{¶20} In granting both motions for summary judgment, the trial court initially

noted that appellant expressly admitted during his deposition that the original impetus for the investigation into Mr. Kopervac's welfare had been the telephone call from the township police chief to the probate judge. In light of this, the trial court concluded that appellant should not be permitted to present evidence tending to show that Rish predicated her entire investigation upon the alleged conversation between her and Commons. As a result, the court further determined that appellant had failed to submit sufficient evidence to create a factual dispute as to whether Rish and Commons had spoken directly to each other about the Mr. Kopervac situation prior to the issuance of her report. Accordingly, the trial court ultimately concluded that appellant could not meet the necessary elements of each of the remaining claims, as there was a lack of evidence that Commons and Rish conspired to stop appellant from inheriting Mr. Kopervac's estate.

{¶21} Appellant raises one assignment of error for review:

{¶22} "The trial court erred in granting appellees' motions for summary judgment."

{¶23} Appellant essentially argues the trial court improperly interpreted the evidentiary materials accompanying his response brief. Specifically, he contends the trial court erred in its holding that his materials could not be considered with respect to the issue of whether Commons and Rish had conspired to produce a false report concerning his relationship with Mr. Kopervac. He further asserts that if his mother's affidavit and his deposition testimony were considered, they would have been sufficient to raise a factual dispute as to whether Rish's investigation was driven by a discussion she had with Commons immediately after the probate court's initial order. We disagree.

8

**{¶24}** This court reviews a trial court's granting of a motion for summary judgment de novo. *Grafton v. Ohio Edison, Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Civ.R. 56(C); *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993).

> **{¶25}** Once the moving party has met its burden of supporting its motion with sufficient admissible evidence, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth facts showing that there is a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the nonmoving party does not satisfy this reciprocal burden, summary judgment, if appropriate, shall be granted against the nonmoving party. Civ.R. 56(E).

*McWreath*, 2012-Ohio-3013, ¶21-22.

**{¶26}** Appellant claims the trial court improperly engaged in a weighing exercise and decided that his evidentiary materials were not entitled to any weight. But appellant has mischaracterized the trial court's analysis. Instead of weighing conflicting evidence, the trial court held that appellant's materials could not be considered *at all* because they were in conflict with his own prior statement.

**{¶27}** "'An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment.'" *Natale v. Everflow Eastern, Inc.*, 195 Ohio App.3d 270, 2011-Ohio-4304, ¶29 (11th Dist.), quoting *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph three of the syllabus.

9

**{¶28}** As part of her summary judgment motion, Rish presented a copy of the police report pertaining to the burglary of Mr. Kopervac's home. The police report contained a statement that the Vienna police chief had called the probate judge to inform him of Mr. Kopervac's situation as an elderly person who may not have been able to adequately protect himself during a burglary. Consistent with this evidence, appellant admitted in his deposition that the original stimulus of the ensuing investigation had been the police chief's call to the probate judge. Furthermore, appellant testified that he called the police regarding the burglary.

**{¶29}** In her affidavit accompanying appellant's response brief, Mary McWreath stated that, during an interview at Mr. Kopervac's home, she heard Rish answer "yes" when appellant asked her if the only reason she was conducting the interview was because Commons had told her about the possible transfer of Mr. Kopervac's funds from the bank. It is undisputed, however, that Rish's initial interview with Mr. Kopervac occurred within three days of the burglary and her second interview with Mr. Kopervac occurred within days of being ordered to conduct an investigation. Therefore, by asserting there was a different stimulus for the investigation only days after the probate judge instructed Rish to look into the matter, Mary was directly contradicting appellant's admission that the police chief's telephone call had been the sole stimulus for Rish's investigation.

**{¶30}** It is not necessary to assess the direct contradiction, however, because Mary's affidavit does not establish a factual issue concerning the causes of action asserted by appellant. There simply is no question as to how and why Rish became involved with Mr. Kopervac's situation: the police chief called the probate court. Even if

10

what Mary claims to have heard was true, this statement cannot be used to manufacture a factual issue as to whether the alleged communication between Commons and Rish was the actual stimulus for the probate investigation. It was not.

{¶31} Further, when considering Mary's affidavit and appellant's own deposition testimony, appellant failed to present any evidentiary materials directly conflicting with appellees' materials as to the lack of conspiracy between Rish and Commons during the investigation. Both Rish and Commons had specific, independent duties and responsibilities with regard to Mr. Kopervac. Mr. Kopervac was an elderly gentleman with substantial assets. It was appellant's conduct at the financial institution that raised legitimate concerns as to whether someone was taking advantage of a vulnerable senior citizen. Under the circumstances, the evidentiary material establishes the probate court, police, Rish, and Commons all acted appropriately to ensure appellant was acting in Mr. Kopervac's best interest. The fact that appellant is upset because *his* motives were being questioned by appellees and others does not establish a cause of action.

{¶32} To establish a claim for interference with an expectancy interest, a plaintiff must prove, inter alia, that the defendant intentionally interfered with an expectancy of inheritance and that the defendant's conduct in interfering was tortious in nature. *McWreath*, 2012-Ohio-3013, ¶50. There is no evidence that Rish or Commons intentionally made false statements that were designed to ruin appellant's reputation and, thus, somehow stop him from inheriting Mr. Kopervac's estate. Furthermore, as to Commons and Cortland Bank, there is no evidence that Commons tried to limit appellant's access to Mr. Kopervac's funds and safety deposit box after appellant

11

answered Commons' question concerning whether the power of attorney was properly witnessed.

{¶33} Likewise, there is no evidentiary material in the record to support appellant's theory that Commons' motivation for conspiring with Rish was to stop appellant from transferring Mr. Kopervac's considerable funds to another bank. Appellant contends this conspiracy was the reason for numerous mistakes in Rish's subsequent report, including the false assertion that appellant had already withdrawn $250,000 from Cortland Bank.

{¶34} Appellant alleges that appellees fraudulently conspired to open an investigation and subsequently pursue the appointment of a guardian for Mr. Kopervac. This investigation expended some of the funds that appellant, as the sole beneficiary, stood to inherit under Mr. Kopervac's will. Hence, he claims he suffered damages. Appellant, however, has failed to set forth any substantive evidence that would support the inference of collusion on behalf of appellees.

{¶35} That Rish and Commons may, at some point, have had a conversation concerning Mr. Kopervac is completely understandable given their respective roles. From the commencement of the probate court's involvement, nothing in the record supports the conclusion that Rish was acting in a manner inconsistent with her role as a court-appointed investigator. She made contact with the prospective ward pursuant to this role and recommended GAPS' involvement in the course of her investigation. Further, because Commons was an agent of the bank who had dealt with appellant and Mr. Kopervac's account, it is completely understandable that Rish may have spoken with him. Even though her report contained certain factual errors, that does not imply

12

those errors were intentional or entered with the purpose to mislead. In any event, there is nothing in the record to indicate the errors were a result of an intentional fabrication made by Commons and/or Rish.

{¶36} Moreover, Commons' call to the probate court does not imply he was at all instrumental in facilitating the formal investigation or opening of the guardianship. As an agent of the bank at which Mr. Kopervac's accounts were held, it is not unusual that he would contact the court, especially in light of appellant's attempt to withdraw funds with what Commons viewed as a suspicious power of attorney. Any connection between Rish and Commons, under the facts as established by the evidence, was due to their respective duties in relation to Mr. Kopervac. Appellant's averment that Commons somehow "utilized his position and influence" to initiate the investigation and guardianship is contrary to the evidentiary material in the record and nothing more than self-serving speculation.

{¶37} There is no evidence that Rish and Commons maliciously conspired to injure appellant through the issuance of false statements in Rish's report. Similarly, if Rish and Commons did not work together to enjoin appellant from withdrawing Mr. Kopervac's funds from Cortland Bank, an abuse of process did not occur because there is no evidence they attempted to use either of the probate proceedings to achieve an ulterior purpose.

{¶38} As previously noted, even if the affidavits of the McWreaths were considered, there are insufficient facts contained in them to substantiate the allegations and meet the reciprocal burden. There are many facts in the record that are undisputed. They establish that appellant contacted the police regarding the burglary,

13

and the officer subsequently contacted the probate court regarding concerns he observed in responding to the phone call. As a result of the officer's phone call with the probate court, the probate court then sent Rish, as the court investigator, to the home of Mr. Kopervac. After her visit on January 9, 2008, Rish determined that GAPS should be notified, prompting an emergency guardianship to be filed on February 7, 2008. Before the filing of an emergency guardianship, however, Commons notified the probate court regarding the situation at the bank and was told the probate court was aware of and looking into the matter. Upon the filing of the emergency guardianship, Rish was required to conduct an investigation and, thus, met with Mr. Kopervac for the second time at his home. Appellant and his mother were present for this meeting. Four days later, Rish filed her investigator's report, which contained factual errors.

{¶39} Shortly thereafter, independent third party, GAPS, filed the "application for appointment of guardian of alleged incompetent." Because of this application, the probate court ordered a further investigation as to the circumstances of Mr. Kopervac, the prospective ward.

{¶40} Appellant's argument is essentially this: There is no evidence that appellees *did not* conspire to interfere with his inheritance, therefore they must have. Such logic is fallacious. One cannot use the absence of proof of a conclusion as evidence for the truth of the opposite conclusion. Due to the logical inadequacy of this inference, as well as the self-serving nature of the substantive averments in appellant's and Ms. McWreath's affidavits, we hold he failed to meet his reciprocal burden.

{¶41} The trial court further held Rish, an employee of the probate court, was immune from liability. We decline, however, to address the immunity issue given this

14

court's conclusion as to the actual merits of the three remaining claims.

{¶42} In light of appellant's failure to create a factual dispute regarding whether Rish and Commons plotted together to thwart appellant's actions to exercise control over Mr. Kopervac's assets, all three appellees were entitled to prevail as a matter of law on the claims of intentional interference with an expectancy interest, civil conspiracy, and abuse of process. The trial court did not err in entering judgment against appellant on the remaining claims of his complaint. For this reason, appellant's sole assignment of error lacks merit.

{¶43} The judgment of the Trumbull County Court of Common Pleas is hereby affirmed.

CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶44} In affirming, the majority holds there is no genuine issue as to any material fact. I disagree.

{¶45} In opposing appellees' motion for summary judgment, appellant advanced the affidavit of his mother, Mary McWreath; his own affidavit; and an excerpt from his prior deposition. According to both affidavits, during the second "Kopervac" interview, Rish made a statement that the investigation was continuing because Commons communicated concerns to her regarding appellant's withdrawal of Kopervac's funds

15

from Cortland Bank. The trial court found that the statements in the affidavits conflicted with appellant's prior deposition testimony that a telephone call from the township police chief to the probate judge was the reason for the investigation into Kopervac's condition, and therefore, declined to consider the affidavits.

{¶46} As a general proposition, when the affidavit of the non-moving party conflicts with his previous deposition testimony, it cannot be used to create a factual dispute to defeat the opposing party's motion. *Wright v. Mar-Bal Inc.*, 11th Dist. Geauga No. 2012-G-3112, 2013-Ohio-5647, ¶27. As an exception to the foregoing, a "conflicting" affidavit must be considered when the non-moving party provides an explanation for the inconsistency. *Id.* For reasons to follow, there was no inconsistency, but even assuming inconsistency, appellant gave the necessary explanation.

{¶47} During his deposition, appellant agreed that the probate judge's decision to appoint Rish to investigate Kopervac's competency was initially predicated upon the police chief's call concerning the burglary. However, appellant expressly asked for an opportunity to explain his answer. In his ensuing testimony, he said that, within a few days after the police chief's call to the probate court, Rish came to Kopervac's residence on two separate occasions to conduct interviews. According to him, the impetus for her first interview was the burglary report and the general concern for Kopervac's well-being. But, the impetus for Rish's second visit was due to the communication between Rish and Commons:

{¶48} "A. Ms. Rish, when she was questioning and asking my mother questions and then she asked me questions, I told her – I said, 'Let's just cut the s***' – pardon my

16

French, I says, 'You're here because Cortland Bank has called you,'" I said, 'Because of the fact of me trying to move the money because of the interest rate.' And she said, 'Yes, it is.'"

{¶49} Allowing for reasonable inferences, although the police chief's phone call to the probate court was the impetus for Rish's first visit, her conversation with Commons was the grounds for her second interview and, ultimately, the factual errors in her written report. To this extent, appellant's deposition testimony is consistent with his affidavit.

{¶50} Moreover, given that Mary McWreath's affidavit had a similar averment concerning Rish's statement, it was likewise consistent with appellant's deposition testimony as to the ongoing reason for the investigation. Because testimony regarding Rish's statement is admissible as a statement against interest, Evid.R. 801(D)(2), the trial court erred in not considering both affidavits.

{¶51} When viewed in a manner most favorable to appellant, the two affidavits and the deposition excerpt create a genuine issue of material fact as to whether Commons and Rish communicated prior to the completion of her written report.

{¶52} The majority concludes that even if appellant's evidence regarding Rish's statement is considered true, "this statement cannot be used to manufacture a factual issue as to whether the alleged communication between Commons and Rish was the actual stimulus for the probate investigation." *Supra*, at ¶30. While true, that misses the mark. With reasonable inferences, a jury could conclude that it was the continuation of the investigation and the second interview that led to false statements in the report.

{¶53} Resultantly, I disagree with the majority's assertion that we need not

17

address the second aspect of the trial court's summary judgment analysis; i.e., even if appellant is entitled to go forward against Rish as a factual matter, should judgment still be entered in favor of Rish on the basis that she is immune from liability?

{¶54} The trial court's "immunity" analysis is two pronged. First, the court held that Rish was entitled to absolute immunity on the basis that she was acting on behalf of the probate judge in performing her investigation into the "Kopervac" situation. Second, the court found that she was entitled to qualified immunity under R.C. 2744.03(A)(6), as there is no evidence that she had acted maliciously, in bad faith, or in a reckless or wanton manner.

{¶55} Under Ohio common law, if a state judge has jurisdiction over a particular case or controversy, he or she is afforded absolute immunity from civil liability for all actions taken while performing his or her judicial duties. *Loyer v. Turner*, 129 Ohio App.3d 33, 36 (6th Dist.1998). By way of case law, this absolute judicial immunity extends from judges to any quasi-judicial officers, such as a city or county prosecutor. *See Jopek v. Cleveland*, 8th Dist. Cuyahoga No. 93793, 2010-Ohio-2356, ¶30. Furthermore, court agents have also been given absolute immunity when engaged in acts of a judicial or quasi-judicial nature. *Loyer*, at 36.

{¶56} In *Clover v. Joliff*, 11th Dist. Trumbull No. 2001-T-0135, 2002-Ohio-5161, this court concluded that a common pleas court's probation officer is entitled to absolute immunity in the performance of his duties so long as he does not act beyond the scope of his authority. Citing our previous opinion in *Clark v. Eskridge*, 77 Ohio App.3d 524, 529 (11th Dist.1991), the *Clover* court noted that a probation officer's immunity extends to the preparation and filing of a presentence investigation report because the common

18

pleas court relies upon those reports in imposing sentence in a criminal matter. *Clover*, at ¶20.

**{¶57}** In holding that Rish was entitled to absolute immunity as a court employee, the trial court relied upon *Clover.* The similarity of Rish to a probation officer is undeniable. The *Clover* decision, however, is flawed and should be overruled. In *McKinney v. Hartley*, 5th Dist. Fairfield No. 2007CA-00072, 2009-Ohio-274, ¶11, the Fifth District noted that the *Clover* court failed to acknowledge the effect of R.C. 2744.03(A)(7) upon the extension of absolute judicial immunity to other court employees.

**{¶58}** R.C. 2744.02(B) lists a set of specific instances in which an Ohio political subdivision or its employee can be found liable in a civil action. R.C. 2744.03(A) then provides, in pertinent part:

**{¶59}** "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

**{¶60}** "* * *

**{¶61}** "(7) The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state, is entitled to any defense or immunity available at common law or established by the Revised Code."

{¶62} R.C. 2744.01 et seq. sets forth a complete scheme governing immunity for Ohio political subdivision and its employees; thus, "[t]he effect of R.C. 2744.03, with the exception of the common law immunity preserved by R.C. 2744.03(A)(7), is to abrogate all other immunity provided under common law." *Potter v. City of Troy*, 78 Ohio App.3d 372, 386 (1992). *See also Triomphe Investors v. City of Northwood*, 835 F.Supp 1036, 1046 (W.D.Ohio, 1993). In relation to common law immunities, R.C. 2744.03(A)(7) refers only to political subdivisions, lead prosecutors, assistant prosecutors, and judges. The statute does not refer to a court investigator of any kind. As a result, although Rish was appointed by the probate court to conduct the investigation, she was not entitled to absolute judicial immunity because her court position or job is not included in R.C. 2744.03(A)(7).

{¶63} In the second part of its "immunity" analysis, the trial court found that Rish was entitled to qualified immunity under R.C. 2744.03(A)(6). This division provides that a political subdivision's employee can assert the following as a defense from civil liability:

{¶64} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

{¶65} "* * *

{¶66} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶67} In holding that appellant did not present evidence tending to show that the

exception to immunity under subdivision (b) was applicable to Rish's acts, the trial court stated that, even if the Rish report contained multiple factual errors, there was no "correlation" between the errors and any inappropriate behavior on her part. However, in drawing this conclusion, the trial court clearly relied upon its earlier determination that there had been no telephonic communication between Rish and Commons before the issuance of her written report.

{¶68} As previously discussed, there is evidence presented that Rish and Commons communicated before issuance of the report, that the report contains false statements, and that the errors could have been avoided had a thorough neutral investigation been performed.

{¶69} A juror could find, at the very least, that Rish acted recklessly and, therefore, there is a triable issue regarding qualified immunity. R.C. 2744.03(A)(6).

{¶70} Given the error in the trial court's analysis of the evidentiary materials pertaining to the "Rish-Commons communication" issue, I conclude that none of the three appellees, Rish, Commons, or Cortland Bank, were entitled to summary judgment on any of the three remaining claims. Accordingly, I dissent.

21